**United States District Court**
**For the Northern District of California**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. C 06-428 SI |
| Plaintiff, | **ORDER DENYING DEFENDANT CHU'S MOTION TO SUPPRESS** |
| v. | |
| RICHARD WONG, et al., | |
| Defendants. | |

On December 15, 2006, the Court heard argument on defendant I Ching Chu's motion to suppress. For the reasons set forth in this order, the Court DENIES defendant's motion.

**BACKGROUND**

On June 22, 2005, Officers Cagney, Watts and Braconi of the San Francisco Police Department arrested defendant at his mother's house pursuant to an arrest warrant issued for misdemeanor violations of California Vehicle Code sections 12500(a) (driving without a license) and 23152(a) (driving under the influence) and 23152(b) (driving with a blood alcohol content level above .08%). *See* McNamara Decl. Ex. A. The arrest warrant was issued because defendant had missed a court appearance on the charges. Chu Decl. ¶ 6.

Officers Cagney, Braconi and Watts are all members of the SFPD Narcotics Division, and had been working with Inspector David Martinovich, who was investigating marijuana cultivation and

trafficking by numerous suspects, including Enrique Chan and Richard Wong.[1] Prior to executing the arrest warrant on defendant Chu, the three officers had assisted in the execution of a search warrant at Chan's residence. Cagney states that he "was thus familiar with the background of the investigation, including the fact that various defendants had been indicted federally for conspiracy to cultivate and traffic in marijuana, and that various defendants appeared to use cellular telephones and computers to communicate with each other. I also knew, from conversations with Inspector Martinovich, that I Ching Chu was believed to be linked to at least one marijuana grow site currently operating under Richard Wong." Cagney Decl. ¶ 2(a).

The officers arrested defendant in his bedroom. According to the declaration of Inspector Cagney, at the time of the arrest, defendant was standing in the middle of a small bedroom, between his bed and a desk and table opposite the bed. Cagney Decl. ¶ 4. Cagney states that the bed, desk and table were all "easily" within defendant's reach from where he stood at the time of the arrest. *Id.* Cagney states that "[t]he entire bedroom was very small, and appeared to be a converted pantry or laundry room, or something of that sort." *Id.* ¶ 4(a). Cagney states that from where defendant stood when officers first entered the room, defendant could reach the bed, the desktop and the table. *Id.* ¶ 4(b). According to Cagney, defendant would have to stand on the bed to reach the upper shelf of the closet. *Id.*; *see also* Braconi Decl. ¶ 4 ("The room was so small that all three areas had been within I Ching Chu's reach from where he was standing when we first encountered him."). Defendant has not submitted any evidence regarding his proximity to the bed, desk or table at the time of his arrest.

After arresting defendant, the police asked him whether there were any weapons in the room. Defendant directed officers to a shotgun that was on the top shelf of the closet. *Id.* ¶ 5. The officers seized the shotgun, which was disassembled, with some pieces in the original box and some pieces loose on the shelf. *Id.*

Officers removed defendant from the bedroom and had him stand in the bedroom doorway. *Id.* ¶ 6. The parties dispute whether officers questioned defendant. Defendant's reply declaration states that after officers "forced my door open and handcuffed me, the police interrogated me for a total of at least

---

[1] Chan is the lead defendant in CR 05-375; Wong is the lead defendant in this case.

1 15-20 minutes." Reply Chu Decl. ¶ 2. Cagney's declaration states that the officers "did not attempt to
2 interview I Ching Chu at his residence." Cagney Decl. ¶ 12. For purposes of the instant motion, the
3 Court will assume that officers questioned defendant for 15-20 minutes. Defendant's declaration does
4 not state whether he was questioned before, during or after the search of his bedroom.

5       Officer Cagney, perhaps with assistance from Officer Braconi, searched defendant's bedroom
6 as a "search incident to arrest." Cagney seized a number of clear baggies containing what Cagney
7 recognized to be marijuana. The baggies were in open view on top of the desk.[2] Cagney also seized two
8 paper bags, open at the top, that contained loose marijuana. In total, Cagney seized approximately 150
9 grams of marijuana.

10       After he seized the marijuana, Cagney contacted Martinovich and informed him that defendant
11 was in custody and that officers had found a shotgun and a "fairly large amount of marijuana in the
12 bedroom." *Id.* ¶ 8. Martinovich told Cagney that he had found an operating marijuana grow at a site
13 to which Chu was believed to be connected. *Id.* Martinovich told Cagney that there was probable cause
14 to charge defendant with felony cultivation of marijuana and possession for sale of marijuana. *Id.*

15       Cagney continued to search. Close to the baggies of marijuana, Cagney found a set of keys and
16 a large amount of currency ($714). *See* Braconi Decl. ¶ 5. Cagney continued searching the desktop and
17 table, both of which were allegedly within defendant's reach at the time of his arrest. On the desktop
18 and table, Cagney seized indicia and apparent pay/owe sheets. *See* Cagney Decl. ¶ 10(a). Cagney states
19 that most of the indicia and papers were visible without anything having to be moved, while others had
20 to be manipulated to see their contents. *Id.* . Cagney "looked at briefly" all of the papers that he seized
21 to determine whether the papers were indicia of defendant, either to link him to the room where the
22 marijuana, keys and currency had been found, or as evidence that they pertained to marijuana possession,
23 cultivation or sale. *Id*. Cagney states he examined "maybe half of the paperwork in the room – and only
24 paperwork that was found on the desktop or the table (both of which I considered to be within the area
25 of Chu's immediate control at his arrest)." *Id.* Cagney also examined a spiral notebook, which Cagney
26 believes was on the desktop. *Id.* ¶ 10(b).

---

[2] Defendant does not challenge the seizure of the marijuana.

3

Cagney also seized a computer from the desktop, a laptop and PDA from the table, and a cell phone from the bed. These items have not yet been searched, though they remain in SFPD custody since their seizure. *Id.* ¶ 10(c).

## DISCUSSION

Defendant moves to suppress all of the items seized during the search, with the exception of the marijuana. Defendant contends that the search was not incident to an arrest because the search and seizure were separated by intervening acts, namely the officers' questioning of him for 15 to 20 minutes, and Cagney's call to Martinovich.

The legitimacy of a warrantless search incident to arrest depends on "whether the arrest and search are so separated in time or by intervening acts that the latter cannot be said to have been incident to the former." *United States v. McLaughlin*, 170 F.3d 889, 893 (9th Cir. 1999). "There is no fixed outer limit for the number of minutes that may pass between an arrest and a valid, warrantless search that is a contemporaneous incident of the arrest. Instead, courts have employed flexible standards such as 'roughly contemporaneous with the arrest,' and within 'a reasonable time' after obtaining control of the object of the search." *Id.* at 892 (internal citations omitted). *See, e.g., United States v. Weaver*, 433 F.3d 1104, 1106 (9th Cir. 2006) (upholding search that occurred 10-15 minutes after an arrest; during interval, officers waited for another officer to arrive on the scene and no other intervening acts occurred); *McLaughlin*, 170 F.3d at 892 (upholding search of vehicle that occurred 5 minutes after the defendant had been removed from the vehicle and transported to the police station; during the interval, the officer who searched the vehicle completed paperwork necessary to impound the vehicle); *cf. United States v. Vasey*, 834 F.2d 782 (9th Cir. 1987) (invalidating search that took place 30-45 minutes after the defendant had been removed from his vehicle, handcuffed, and repeatedly questioned by officers).[3]

Based upon the record before the Court, the Court finds that the search of defendant's bedroom was "roughly contemporaneous" with his arrest. Cagney's phone call to Martinovich was not an

---

[3] The Court notes that in *Vasey*, officers did not attempt to justify the search as one incident to arrest, but rather as an inventory search of the vehicle. *Id.* at 787.

4

intervening act, but rather was "part of a continuous, uninterrupted course of events" of conducting the search. *McLaughlin*, 170 F.3d at 893. Cagney called Martinovich to inform him that he had found marijuana and a shotgun in defendant's bedroom, and Martinovich told Cagney that he had found an operating marijuana grow to which defendant was believed to be connected. The call took place during the course of the search, and was topically related to the search. Accordingly, the Court finds that the call to Martinovich did not invalidate the search incident to arrest.

Although it is a closer call, the Court concludes that based upon the evidence submitted, the alleged questioning of defendant also did not constitute an intervening act. Defendant states that officers questioned him for 15 to 20 minutes after he was arrested. Significantly, however, defendant does not state that officers questioned him *before* conducting the search of his bedroom; defendant's reply declaration is silent on when the alleged questioning took place. Defendant's reply declaration also does not provide any specific information regarding what allegedly transpired during the questioning. Because there is no evidence before the Court that defendant was questioned prior to the commencement of the search, the Court finds that there was no intervening act to invalidate the search of defendant's bedroom as a search incident to arrest.

At the December 15, 2006 hearing, defendant asserted for the first time that an evidentiary hearing was required on the question of whether the area searched was within defendant's immediate control. However, the only evidence before the Court on this issue consists of the Cagney and Braconi declarations, which both state that the bed, desk and table were all within defendant's reach at the time he was arrested. Neither of defendant's declarations discuss his proximity to the areas searched. Because there is no conflicting evidence in the record on this issue, the Court finds that an evidentiary hearing is not warranted.

Accordingly, for the foregoing reasons, the Court rejects defendant's challenge to the search of his bedroom as a search incident to arrest. *See generally United States v. Hudson*, 100 F.3d 1409 (9th Cir. 1996). As such, the Court does not reach the parties' contentions regarding the applicability of the plain view doctrine.

## CONCLUSION

For the foregoing reasons, the Court hereby DENIES defendant's motion to suppress. (Docket No. 82).

**IT IS SO ORDERED.**

Dated: January 9, 2006

SUSAN ILLSTON
United States District Judge